GRAND TRUNK RY. CO. v. CENTRAL VERMONT R. CO.

(Circuit Court, D. Vermont. May 22, 1897.)

INSOLVENT RAILROAD COMPANIES—LEASED ROADS—RECEIVERSHIP—FUNDS.

By a covenant in a railroad lease, the lessee company assumed all obligations of the lessor incurred as common carriers, warehousemen, or otherwise, and agreed to indemnify it for all costs, damages, or losses arising from its failure to perform such obligations, or from negligence, accident, or default, and for claims, damages, judgments, or actions arising from the maintenance of the leased road. *Held*, that net earnings of the leased road, accruing in the hands of receivers of both companies, were not chargeable with judgments obtained during the receivership, for losses sustained on that road prior to the appointment of receivers, but such earnings must go to the bondholders under other provisions of the lease.

Wager Swayne, for petitioner.
Benjamin F. Fifield and Charles M. Wilds, for receivers.

WHEELER, District Judge. Since the petition of Charles Parsons, intervener in this cause, was heard, an additional report has been made by the receivers as to claims alleged to be chargeable upon the net earnings in question. 78 Fed. 690. This report shows several cases in which judgments have been recovered during the receivership against the Central Vermont Railroad Company for losses on the Ogdensburgh & Lake Champlain Railroad Company, occurring before the appointment of receivers, and several others of large amounts still pending for like losses, and also for damages occasioned by the operation of that railroad under the lease from that company to the Central Vermont Railroad Company. These cases are, in aggregate amount, large enough to cover the whole of the fund in question, and, if they could be chargeable upon this fund, the whole of it should be retained till the claims are disposed of. The lease provides, however (article 5):

"That all the gross earnings, income, and receipts of and from the business, traffic, and rents of said railroad and other property, and referred to in art. 2 of this agreement, shall in each year and annually, during the continuance of this agreement, be applied and disposed of by the party of the second part as follows: First, * * * the other expenses of the maintenance, operation,

use, development, and improvement of the said railroad and other property of the said party of the first part; second, to payments of obligations retired and not here at all material; third, to the payment punctually when due and in full of the interest on the bonds issued and to be used by the party of the first part, * * * and known and described in the mortgage executed by said party of the first part to William J. Averell and Stuyvesant Fish, as trustees, * * * dated April 1, 1880, * * * the total issue whereof is limited to three million five hundred thousand dollars, and which interest is at the rate of six per centum per annum, and is payable semiannually on the first days of April and October in each year. * * *"

The question arises as to what the Central Vermont Railroad Company, the lessee, and the receivers, standing in their right, were entitled to retain and use for the expenses of the maintenance, operation, use, development, and improvement of the said railroad and other property. Oftentimes damages to others, arising from the operation of a railroad, are treated as a part of the operating expenses, but in this case the lease itself provides, with reference to such damages, that the lessee was "to assume all obligations of the party of the first part that may hereafter be incurred, either by statute or at common law, as common carriers, warehousemen, or otherwise, and indemnify and save harmless the party of the first part from all costs, damages, or loss, by reason of any failure to fulfill said obligations, and by reason of any claim that may be made for any neglect, accident, or default happening upon or in connection with said road or other property of the party of the first part, and from any claims, damages, actions, or judgments arising from the maintenance and operation of said railroad and other property during the continuance of this agreement." According to this stipulation, the liability of the Central Vermont Railroad Company, in the operation of the Ogdensburgh & Lake Champlain Railroad under this lease, was its own liability, to be taken care of by itself, and not in any way to be made chargeable upon any of the gross earnings of the Ogdensburgh & Lake Champlain Railroad. Therefore none of these liabilities, as mentioned in the report of the receivers, can in any way become chargeable upon the net earnings in question, and they cannot stand in the way of the payment of these net earnings over to the bondholders according to the provisions of the lease.

It has been made known that the trustees, Averell and Fish, have commenced suit to foreclose this mortgage in the United States circuit court for the Northern district of New York, and that these receivers here were appointed receivers there of the Ogdensburgh & Lake Champlain Railroad Company; and that, notwithstanding they were under orders here, on the petition of the bondholders, to set apart these net earnings of that railroad until further order, they were there ordered to set apart these net earnings after November 1st, there, and deposit them for the benefit of the bondholders, thus leaving them under the order of each court to deposit the same net earnings in different places. Claims for operating expenses, which had accrued during the time they were to deposit the net earnings under the orders of this court, were not vouched and paid until within the time during which they were to deposit the net earnings in the other place, under the orders of that court, to the amount of about $25,000; and, as there are other unvouched claims arising

in the course of business, amounting to about 40 per cent. of $22,000, and still other claims and expenses to some amounts which may be chargeable upon these net earnings, it is deemed proper that enough of these net earnings should be retained here for the payment of whatever may be allowed upon these claims as chargeable upon them. In view of the whole, it seems safe that $105,000 of these net earnings should be paid over to the bondholders according to the provisions of the lease, to apply on the debt for which their mortgage is being foreclosed, and that the balance be retained in this court. Although it now seems clear that no part of these first-mentioned claims can ever become chargeable upon these funds, still, in this summary order, it seems proper to provide that, in case any part of the sum so to be paid over shall by any possibility be needed by the receivers to discharge any of these claims upon those net earnings, by paying over this sum of $105,000 the receivers shall stand subrogated to the rights of the bondholders, to whom they are paid under the mortgage, as it may be foreclosed, so far as may be necessary to indemnify them for any sums that may become chargeable thereupon. This reduces the remainder of these net earnings to so small an amount that it seems safe that it be paid over to the receivers to be held by them, but in a separate account from which such further sum as may belong to the bondholders may be paid, subject, however, to the payment of the interest thereon at 5 per cent., in case the funds are used for the purposes of the general receivership; and, if so used, they are to be chargeable as a debt of the receivers upon such funds. Ordered accordingly.